# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

GARY SHEDD, individually and as
administrator of the estate of Linda Shedd,
deceased,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. CIV-15-342-RAW

### Findings of Fact and Conclusions of Law

Having considered this record as a whole, the court enters its findings of fact and conclusions of law pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure. To the extent a finding of fact constitutes a conclusion of law, the court adopts it as such. To the extent a conclusion of law constitutes a finding of fact, the court adopts it as such.[1]

1. Venue in this court is proper, and this court has jurisdiction of the parties and subject matter in this cause to hear and determine liability and damages issues arising out of the injuries sustained by Linda Shedd caused by negligent healthcare provided at Hastings Indian Hospital (hereinafter "Hastings") pursuant to 28 U.S.C. §§ 1346(b), 1367, 1402(b), and 2671, *et seq*.

---

[1] The Tenth Circuit has stated that Rule 52 does not require the district court to set out its findings and conclusions in "excruciating detail." OCI Wyo., L.P. v. Pacific Corp., 479 F.3d 1199, 1204 (10th Cir. 2007). This phrase precisely describes what the result would be here if the court traced the path the parties took in their meticulous delineation and explanation of the testimony and exhibits (especially the medical records and medical procedures) at trial. Instead, the court limits its findings and conclusions here to the timeline and the issues that determine the outcome of this case.

2. Under the Federal Tort Claims Act, liability for medical malpractice is controlled by state law, the law of Oklahoma in this case. In Oklahoma, a plaintiff in a medical malpractice action must prove by a preponderance of the evidence that there was a duty owed by the defendant to protect the plaintiff from injury, that there was a failure to perform that duty, and that injuries to the plaintiff were proximately caused by the defendant's failure to exercise the duty of care. Flynn v. United States, 902 F.2d 1524 (10th Cir. 1990); Smith v. Hines, 261 P3d 1129 (Okla. 2011).

3. The parties stipulate to the following facts:

   a. Linda Shedd was born on June 10, 1951;

   b. Gary Shedd and Linda Shedd were married in 1993 and continued to live as husband and wife until the death of Linda Shedd;

   c. Linda Shedd had two children surviving her, Lori Blossom and Lindsay Bruno, both adult daughters;

   d. Linda Shedd was admitted to Hastings on February 10, 2014 for outpatient laparoscopic surgery to remove her gallbladder and lyse abdominal adhesions;

   e. Dr. Arnaud, Dr. Hsieh, Dr. Mera and Dr. Nydick were employees of Hastings between February 10, 2010 and February 15, 2014;

   f. Linda Shedd was transferred from Hastings to Hillcrest Medical Center on February 15, 2014; and

   g. Linda Shedd died on February 18, 2014;

4. The court also finds:

   a. Following the surgery on February 10, 2014, Linda Shedd was transferred to the ICU at Hastings and diagnosed with sepsis;

b. While in the ICU at Hastings, Linda Shedd also had low urine output, hypotension, tachycardia, respiratory distress, and high bands and neutrophils;

c. The opinion of the healthcare providers at Hastings was that the sepsis was caused by pneumonia;

d. Linda Shedd was intubated on February 13, 2014;

e. On the morning of February 13, 2014, the hospitalist at Hastings ordered a "stat"[2] CT scan;

f. The CT scan was not performed until February 14, 2014;

g. The CT scan showed, along with other clinical findings, signs that the sepsis was likely originating from an abdominal source[3];

h. During the five days Linda Shedd was a patient at Hastings, she took in nothing by mouth, had no bowel movement, had hypoperistalsis, and gained approximately fifty pounds; and

i. The healthcare providers at Hastings did not recommend or offer surgical intervention to determine the cause of the sepsis or to correct it.

5. The Defendant in this case, through the healthcare providers at Hastings, undertook the care of Linda Shedd while she was a patient there and owed her a duty to provide care that met acceptable standards. Plaintiff has proved by a preponderance of the evidence that the healthcare providers at Hastings failed to meet their duties as follows:

a. Dr. Arnaud caused injuries to Linda Shedd's bowel and/or bladder during the surgery he performed on February 10, 2014;

---

[2] The medical term "stat" refers to a diagnostic or therapeutic procedure that is to be performed immediately. The CT scan should have been performed within at least four hours.

[3] See Defendant's Exhibit 1, p. 927. Dr. Mera's report stated, *inter alia*: "CT sepsis with abdominal origin and development of ARDS is favored" and "CT of abdomen reveals possible volvulus and ischemic colitis, being addressed by surgery."

b. Dr. Arnaud and the other healthcare providers at Hastings failed to recognize Linda Shedd's leaking bowel and/or bladder during the surgery on February 10, 2014 and thereafter;

c. The healthcare providers at Hastings unreasonably failed to test the fluid from Linda Shedd's Jackson-Pratt Drain for bacteria;

d. The healthcare providers at Hastings unreasonably failed to order a CT scan on February 11, 2014 and thereafter until February 13, 2014;

e. The healthcare providers at Hastings unreasonably failed to perform the CT scan on the date it was ordered, February 13, 2014, and therefore also unreasonably failed to identify the abdominal origin as the source of sepsis and subsequently perform reoperation on that date;

f. The healthcare providers at Hastings unreasonably failed to perform a reoperation on February 14, 2014 and thereafter once the CT scan was performed, reviewed, and the abdominal origin was established as the likely source of sepsis[4];

---

[4] Ultimately, the only way to determine whether a patient has a leaking bowel is to reoperate. The medical standard of care is as follows:
> Diagnosis and Management of Anastomotic Leak
> Anastomotic leaks can be divided into "free" and "contained" varieties. Free leaks are those in which fecal contents leak from the anastomosis and spread throughout the abdominal cavity. Patients usually present with fever, tachycardia, leukocytosis, and diffuse peritonitis. Feculent fluid may present itself through the surgical incision or via the pelvic drains. Hypotension and other signs of systemic sepsis may ensue. If the patient is stable, radiologic investigation may be helpful to localize the leak and to determine its size and severity, although this is usually readily apparent at laparotomy. Radiographic studies, however, should not be allowed to delay reoperation.

The ASCRS Textbook of Colon and Rectal Surgery, p. 160.

Dr. Mera acknowledged that the medical standard of care requires that the source of sepsis be identified within twelve hours. He also testified that if a patient had a volvulus, ischemic colitis, or a perforated bowel left unrepaired surgically, it would be fatal. Moreover, the healthcare providers at Hastings did not document any disease process that would have caused her overwhelming bacterial infection. The court further notes that aspiration pneumonia was not included in Dr. Wideroff's July 14, 2016 Rule 26 expert report.

g. Considering Linda Shedd's medical history[5] and the procedure Dr. Arnaud performed on February 10, 2014[6], he and the other healthcare providers at Hastings unreasonably failed to consider the abdominal origin as the likely source of sepsis. Bowel leakage should have been at the top of the differential diagnosis; and

h. The healthcare providers unreasonably failed to offer Linda Shedd or her husband Gary Shedd surgical intervention to diagnose and treat her condition between February 10, 2014 and February 15, 2014.

6. The court further finds:

a. Linda Shedd died as a result of the complications arising from the surgery performed on February 10, 2014;

b. The complications Linda Shedd experienced following the February 10, 2014 surgery were proximately caused by Dr. Arnaud and other healthcare providers at Hastings;

c. Linda Shedd's sepsis was caused by bowel and bladder leakage;

d. While Linda Shedd had pneumonia, that would not have caused the overwhelming bacterial infection from which she suffered;

e. While a minor bowel leakage is a recognized complication of the procedure Linda Shedd underwent on February 10, 2014, the significant bowel and bladder leakage and the overwhelming bacterial infection suffered by Linda Shedd were not recognized complications;

---

[5] Linda Shedd's medical history put her at a heightened risk for complications, including a rupture or leaking bowel, post laparoscopic surgery to remove her gallbladder and lyse abdominal adhesions.

[6] Dr. Wideroff testified that bowel and/or bladder perforations are a known risk during the procedure, yet Dr. Arnaud and the other healthcare providers at Hastings failed to properly and fully rule out a leaking bowel and/or bladder as a likely source of sepsis.

5

    f. The injuries Linda Shed sustained during the surgery on February 10, 2014, left untreated until February 15, 2014 would have caused her death regardless of her pre-existing condition;

    g. Actions and inactions of healthcare providers at Hastings caused physical and mental pain and suffering to Linda Shedd; and

    h. The suffering and ultimate death of Linda Shedd caused her husband and daughters mental pain and suffering, grief, and loss of society and companionship.

7. Judgment is hereby entered against Defendant in favor of Plaintiff in an amount of $745,126.22 to compensate Plaintiff for the injuries and damages the court finds were proximately caused by the negligence of the healthcare providers at Hastings responsible for providing care to Linda Shedd. The total judgment amount is comprised of the following elements:

    a. $132,148.81 for the medical expenses incurred for Linda Shedd at Hillcrest as a result of the injuries and damages caused by the healthcare providers at Hastings;

    b. $200,000.00 for the physical and mental pain and suffering of Linda Shedd before her death;

    c. $200,000.00 for the grief, loss of society and companionship, and mental pain sustained by Gary Shedd due to the death of Linda Shedd;

    d. $200,000.00 for the grief and loss of companionship suffered by Linda Shedd's children resulting from her death; and

    e. $12,977.41 for Linda Shedd's funeral service, burial, and monument.

8. Defendant is legally liable for Plaintiff's injuries and damages by reason of negligent medical care provided by the healthcare providers at Hastings to Linda Shedd while she was a patient there.

9. Plaintiff should recover his costs of court from Defendant.

10. Post-judgment interest should accrue and be payable on all of the above amounts at the maximum rate allowable by law from the date the judgment is filed with the appropriate government agency until said judgment is paid.

**IT IS SO ORDERED** this 29th day of November, 2016.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**